That brings us to the last case on the argument calendar, that's Hansen v. City of New York. All right, Mr. Klein, you have reserved two minutes for rebuttal, so you may proceed. Yes, Your Honor. May it please the Court, good morning. My name is Jonathan Klein and I represent the plaintiff appellant, Kenneth Hansen, who happens to be in the back of the courtroom here today. In this USERRA case, the district court essentially required too much of the plaintiff when it came to the pleading. It required a heightened pleading standard, basically. At this stage of the case, the plaintiff wasn't required to prove his case, of course. He's only required to plead a facially plausible one, and he did that. Rule 8 calls for a short and plain statement. But an employment discrimination case, including a USERRA claim, does not have the heightened specificity pleading standards that, for example, a fraud case or a civil recall case would have. But it appears that the district court was looking for more than that. Well, I mean, if the facts pleaded just on their face don't support, you know, the type of adverse action that is contemplated under USERRA, I mean, we don't have to wait for summary judgment for that, right? I mean, that's a legitimate use of a 12 v. 6 motion, right? It would be. But here, I think what the district court did is it was not looking at the plausibility of the claim. Some of the adverse employment actions are not covered. They don't rise to the level of actions that were covered by USERRA, right? Well, that's something that's interesting, because what the district court was looking at is certain of the specific acts which were directed against Mr. Hansen. But those – the claim is not that each one of those acts is in itself actually a substantive USERRA violation. USERRA violation has to have a – involve a denial of employment benefits. And when you take those things, just for example, the main thrust of this is that the denial of employment benefits, probably the two most valuable employment benefits that any police officer can have, and that is the opportunities for overtime pay and for promotions, because those directly and substantially impact the officer's monthly and annual income in the short term, his career-long income in the long term, and probably most importantly, his retirement benefits in the long term. And when you have some of the examples here that lead to that, starting with the negative performance evaluation that was given in 2019 where he was – his superiors criticized him in the performance evaluation for lagging behind his peers' metrics in making arrests and issuing summonses, when his military service prevented him from being there as long as his peers were. And obviously, he would have – Well, the district court said that that's a complaint about failure to give an accommodation, that the standard – I mean, it is correct that your client didn't measure up to the metrics that other police officers did. And his claim is that, well, it should have been excused because there's no way I could have done the same because I was taken away from the job by military service. So that's asking for an accommodation of the sort that is explicitly permitted under the ADA, for example. But the district court said it's not permitted by these statutes. But respectfully, Your Honor, we don't view that as a request for accommodation. The plaintiff never asked for any accommodation. He just wanted to be treated fairly in comparison to his peer officers. So the way to do that would be to look at perhaps maybe a percentage basis on the number of months you work, how many summonses you're issuing, how many arrests you make, and that sort of thing. But – Right. You are entitled under USERRA to reemployment and retention of employment despite having taken time off for military service, right? That's something that's required. Right, but that's – So why isn't that theoretically an accommodation for the same – if they're arguing that this is an accommodation, those are accommodations. You're supposed to be there. That's the most fundamental obligation of the job. You're not there because you're on military service. And the statute specifically says you have to be treated at least for purposes of can you be fired or are you allowed to come back as if you had been there, right? So that kind of accommodation is required by the statute. Well, that's statutorily required, but that's not an issue in the case. He's not claiming that. Well, I understand that. I'm trying to help. This is like – I'm not asking you a question that you might be able to seize upon. Isn't the point that the overall interpretation of the statute works – should work the same way, that you're not really being reemployed and retained in employment if when you come back you are judged on metrics that are not your batting average, in effect, but the number of hits you got? Because how could you if you are allowed to go away to military service and the department is required to take you back when you come back, how can they be permitted to say that we are going to judge you by a metric of how many arrests you made as compared to people who were there for 12 months instead of six? It seems hard for me to see that. I'm finding it hard to see that as an accommodation. On the other hand – I agree. Is there anything in the complaint, though, about how, for example – suppose instead of being in the military, Officer Hansen had been diagnosed with cancer and had to go to the hospital for six months to get that – and was on medical leave, which I assume is allowed in the police department, even without pay. He's away on medical leave and he comes back from that period of illness. Is there anything that says how such a person would be treated with respect to this metric? I really can't answer the question on it because that's not part of you, Sarah. Well, but it is, isn't it? I mean, the question is whether he is treated differently than similarly situated officers who were not on military service. And while it would seem to me to be crazy to think this, so I'm not sure I want to hold you to having to prove it, if it turned out that they treated people who were on medical leave the same way, would that not mean that this is not a discrimination based on military service? If they treated him in that performance review by criticizing that – Yeah. And he did the same with someone who was on medical leave. Yeah, who was on – for some other reason was absent with leave, was granted a leave for some purpose other than military service. It's a little hard for me to believe that they would say when the guy came back from the cancer ward and wants to resume his duties that we're rating you as unsatisfactory performance because you only got half as many arrests last year as the guys who didn't have cancer. And weren't on medical leave. I think that would be bizarre. This seems bizarre. But if you really – if what we're looking for is this a plausible claim, that's one thing. And if we then find out through discovery that everybody who goes on leave for whatever reason still gets evaluated against certain specific metrics, then you would have a hard time proving discrimination, I would think. Well, we never got that far, so we don't know. But I agree with Your Honor's analysis. That's the way it works. And that doesn't mean that he was asking for any accommodation. He wasn't just asking for fair treatment with similarly situated offices. But it seems to me that what Sarah talks about in the adverse employment actions have to relate to the initial employment, reemployment, retention in employment, promotion, or any benefit of employment. And you're only talking arguably about the last of that, right? Correct. Denial of employment benefits.  But, I mean, I think the case law is equally clear that just a negative evaluation is not going to rise to that level. Right. That's what the case law says. But what I'm saying, Your Honor, is that we're not claiming that that in and of itself was a denial of an employment benefit, you know, getting a good valuation. What I'm saying is, as a result of being given that very unfair evaluation, which was based on an anti-military service animus that was directed to the plaintiff, that he suffered a denial of employment benefits. Because what happened next. Promotion opportunities is, I think, what you said, right? That he was denied an opportunity for promotion because he was ineligible, but not due to the poor evaluation, but due to the non-evaluation for the next two years. Correct. Which flowed from the poor evaluation and his principal refusal to sign the 2009 evaluation. I mean, the evaluation is there, whether he signs it or not. But because they then, in retribution, wouldn't give him any evaluation for the next two years, those things all put together, he was just cutting him off at the knees for promotion opportunities. Now, of course, he never sued about that. And I understand there's no statute of limitations there. But he did complain about things. And the complaint in this case says that, or at least a fair reading of it would say, it seems to me, that things got better thereafter. What does that mean? There was a period of time where things got a little bit better when one of his supervisors, I think it was Catechis, who had it in for him, went to a different precinct or different command for a while, and things calmed down a little bit during that time. But when things, later on when he made an EEOC complaint and a Department of Labor vets complaint, that came back to haunt him in the way of retribution, when they seized upon the domestic issues that he had with his ex-wife. That would seem to be a fairly significant thing to seize upon, as you put it, in terms of his being arrested and not telling anybody about it. That's the kind of thing that I've always thought gets you in a lot of trouble at the police department. And by that point, there's no evidence that the people who were accused of discrimination in the past had any involvement in that episode. Is that not right? In the departmental charges regarding the domestic violence thing? That has nothing to do with Catechis or Huerta? I don't believe so, but by that time, because of what those people had done to him over a long period of time, he basically had a target on his back. And his union reps said, you know, they have it in for you. And the departmental charges, when they were first investigated, the investigating officer determined that they were unfounded except for the failure to report it and to get the complaint contains statistics about many officers who face departmental charges arising out of domestic violence situations, the vast majority of whom do not get terminated. And when you sift out of that, just where it's just based on the failure to report the incident, officers don't get terminated for that, especially as with him, where he was about two weeks away from retirement eligibility when they terminated him. If that's not evidence of retribution, I don't know what is. But all of it, none of that can be divorced from this undercurrent of anti-military animus. They hated this guy because he was deployed for training purposes. Who's they? I mean, we have specific people who maybe, although, I mean, you know, from the language that was, the abusive language that was directed at him, none of it is specifically tied. I don't know why they thought he was a shithead, but it doesn't, he doesn't say, you know, the kind of shithead who goes away to military service or if there is such a thing as a slur for veterans, there's none of that. So, I mean, it's quite a leap to say because in a particular period you have a fairly significant incident, it seems to me, of a kind of mistreatment that, objectively speaking, whether that's the reason for it or not, was he had his military service held against him. There's not a whole lot going on until much later. Now, as far as the retaliation claim, what's the time lapse between when he files his EEOC and the Labor Department's veterans complaint and when the domestic violence allegations come to the surface? I believe the EEOC complaint was in the, I thought I had the date here. The last VETS complaint is May 2012. Twelve? Okay. And I thought the incidents generally were from 2009 to 2013, but the last of those complaints, I think it was 2012. And he had a lot on his plate. He didn't, as the Court alluded to, he was advised by It was 2018 when, 2018 to 2021, when these various adverse actions are alleged to have happened. Right. It was a very slow-moving process because in the middle of that there were, I think, there were further call-ups to military service. That's a pretty significant spread. That's not like you file a complaint to the veterans and now they're sort of egging your wife on to make allegations against you. They had it in for you since many, many years before when they were not evaluating you fairly. And when you file these complaints and now suddenly, you know, many years, several years later, that's more than we usually would say is enough on its own to infer retaliation. But temporal, a lack of temporal proximity is not required. Right, right. So you're really relying on not temporal proximity, but you're relying on what you say is this ongoing, continual discrimination that he suffered. Right. In the, there's a district court case, the Castle v. City of Middletown case in 2017, the Southern District, where it held that he served discrimination retaliation cases brought by a firefighter who, like the plaintiff, was a member of the Air National Guard, held that the plaintiff may show causation if it's temporally proximate, indirectly by showing the protected activity was close temporally with the discriminatory treatment, or can prove indirectly through other evidence such as disparate treatment of fellow employees engaged in similar conduct, or directly through evidence retaliatory animus. So temporal proximity is not a requirement. Right. I see I'm way past my time here, Your Honor. Well, you've got a couple minutes for rebuttal, so we'll see what Ms. Moon has to say. Thank you, Mr. Lerner. Thank you, Your Honor. Good morning, members of the Court. Chloe Moon on behalf of the appellees. This Court should affirm the district court's grant of the City's motion to dismiss. Even drawing all favorable inferences in favor of the plaintiff, he has not alleged discrimination, a hostile work environment, or retaliation under USERRA. The vast majority of his complaint deals with his suspension and termination that directly resulted from his domestic violence incidents, and the remainder are not adverse, unconnected to his military status, or too vague. I'd like to go straight to the 2009 negative evaluation following this Court's colloquy. As this Court recognized under Staub, a negative evaluation is not a denial of a benefit under USERRA. Even if, and I heard my adversary say today that he's not saying as a stand-alone basis that is a denial of a benefit. Even if that contributed to lack of overtime or promotional opportunities, I think I'd go back to his specific complaint here, which never explained exactly which promotions he didn't get, which promotions he applied to that somebody else with military leave status, or with a different military leave status got those instead. Similarly, overtime, he never alleged that he had previously gotten overtime, that he was losing some kind of actual benefit of employment for those reasons. So I don't think we even need to get to the accommodation piece here because we don't have a specific adverse action that's connected to military status to even get us to whether or not we can think of it in the way, Judge Lynch, you were thinking of it as an accommodation. Quickly on the retaliation claims. We do recognize that there are multiple ways to show a causal connection. We just don't think that the plaintiff has done that here. I think the complaint primarily focused on disparate treatment, but we don't know what those other officers' military status is, and we certainly don't know whether they had similar conduct here. Here we have three incidents of domestic violence. We have the failure to report, and I'd point your honors to the final recommendation of Gamble that lays out all the factors that contributed to the recommendation for termination on those bases, which included fleeing the scene and drinking. There was a variety of contributing factors to that termination. And then finally, just a quick point on the plausibility that this Court has discussed today. His complaint never alleges facts tying the charges and specifications to his military status, and I'd just like to highlight the fact that the recommendation by Defendant Gamble never mentions his military leave other than the mere fact that some of these incidents happened during the leave. So we just really don't have that plausibility, and I know that, you know, just under basic Iqbal standard, it's a context-specific task, and this Court can use its judicial experience and common sense. We don't have a lot of case law in the USERRA area, and I couldn't find anything that really talked about pleading standards. And so, I mean, is your view that the pleading standards for USERRA is basically the same as pleading standards under Little John or Title VII cases? Yes, I'd say I think the case law that I read supported that we're supposed to be looking at USERRA in a similar way to Title VII. And the closest I found for this circuit is the Hunt v. Kline case, which was a motion to dismiss and a USERRA case. And under that case, this Court, in a summary order, said, a claim will have facial plausibility when the plaintiff pleads factual content that allows the Court to draw reasonable inference and the defendant is liable for the misconduct alleged. So we have a very similar standard to Title VII, I think, under that case, Hunt v. Kline. Unless the Court has any further questions, we ask the Court to affirm. All right. Thank you. Thank you so much. Mr. Kline, you have a couple of minutes to rebuttal. Just a comment, if I may, about what counsel was saying about Defendant Gamble, who was the trial commissioner, I think is the title that he had, who conducted the departmental trial. Of course, he didn't expressly mention anything about the plaintiff's military duties interrupting his police service when he wrote his decision to find him guilty and terminate his employment. Why in the world would he put in his decision smoking gun evidence of USERRA violation? Of course he wouldn't do that. But that's not to say that it's not provable that there was this anti-military animus that pervaded this man's career that played into this whole thing and why he was treated much more harshly in the departmental trial in terms of the ultimate administrative death penalty of having his employment terminated when the vast majority of officers, based on publicly available information, who find themselves in that type of situation for domestic violence issues don't have their employment terminated. We respectfully submit that the court ought to... But, I mean, you keep referring to the pervasive, this whole career he's mistreated because of his military service. And, you know, other than that performance evaluation, which I have a hard time seeing any other way because it seems so irrational, if it's true, as we have to assume it is, that he was judged by a metric that it would be impossible for him to meet given his absence from military service. Where else is there any specific evidence that anything that happened to him was because of his military service? So he didn't get overtime. There could be a host of reasons, legitimate or illegitimate, for that, that don't have anything to do with military service. Far from there being smoking gun evidence, I don't see anything that says we're not going to give you overtime. It would even imply that there's some connection between... You'd almost think they'd make him do overtime if they were unhappy with him and, you know, try and get more out of him or something. Well, in the police world, overtime is not a punishment. I understand that people make their... It's a benefit. Especially in the last few years before retirement by overtime. I understand the importance. It just strikes me as why would we think that, even if we thought they didn't like him and somebody had a personal grudge against him, why is it somehow there's no evidence that other people who are... I mean, a lot of officers are veterans. I assume that quite a few of them have reservist status. It's not like there's a pervasive culture that's alleged here. It's just him? If the case is remanded and we can get into discovery, we may very well find out that information. We just don't have it yet. But to answer the court's question about the district court, well, he tried to get away from the two supervisors, the lieutenant and the captain, who were particularly harsh on him based on his military status by asking for... Well, again, you say based on his military service, but, again, what we really know is that what was really alleged is they didn't like him and they were nasty to him and they mistreated him. Well, if I can finish on that, it will become evident. Because he tried to get a precinct change or to move to a day shift, and they wouldn't let him do that. And the reason they wouldn't let him do that is he said, no one's going to want someone who's taking time off from military service. So that's where you have... That's another piece. That connection there. Also, he was denied an assignment to an intelligence unit, which he sought. Now, that made sense because he had a top-secret security clearance through his military service. He had counterterrorism training. It would have been a good fit for an intelligence unit. But, no, they wouldn't let him move there either. And not going there, also, he didn't have the concomitant benefits of opportunities for overtime or promotion opportunities. And these are, I mean, it's impossible to say, yes, he would have had, actually would have gotten overtime, how many hours he would have gotten, because there's a whole system about how they assign overtime. But what he was deprived of, and this is a benefit of employment, is the opportunity to have these overtime assignments, the opportunity to shine and compete for promotions. And they stepped all over that. And they did it because it was a military service. All right. Well, thank you both. We will reserve the decision. That concludes the arguments on the argument calendar. We have one other case that we will also take on submission and reserve. And with that, Mr. Lin, will you please adjourn the court?